**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAY ECKLER, On Behalf of Herself and All Others Similarly Situated,<br><br>　　　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>WAL-MART STORES, INC., a Delaware Corporation,<br><br>　　　　　　　　　　　　　　Defendant. | CASE NO. 12-CV-727-LAB-MDD<br><br>**ORDER ON WAL-MART'S MOTION TO DISMISS** |

　　　　Kay Eckler bought a dietary supplement from Wal-Mart that, she alleges, didn't deliver the benefits it promised. The supplement is Equate Glucosamine MSM Advanced Triple Strength, which is marketed as good for the health and comfort of joints. Eckler asserts claims for: (1) violations of California's Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq.*; (2) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750; and (3) breach of express warranty.[1] Now pending is Wal-Mart's motion to dismiss under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

/ /

/ /

---

[1] Eckler's attorneys are also behind a virtually identical lawsuit against the manufacturers of Osteo Bi-Flex in the Eastern District of California. Osteo Bi-Flex is the brand name equivalent of Equate. *See Cardenas v. NBTY, Inc.*, Case No. 11-CV-1615.

- 1 -

## I.     Legal Standard

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to Eckler. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat a 12(b)(6) motion, a complaint's factual allegations needn't be detailed; they must simply be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in Eckler's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action. *Bell Atl. Corp.*, 550 U.S. at 555.

## II.    "Lack of Substantiation" Claims

The first question for the Court is whether Eckler's false advertising claims under the Unfair Competition Law and Consumers Legal Remedies Act are really just "lack of substantiation" claims. It's a problem if they are, because private litigants can't bring those claims. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107

//

Cal.App.4th 1336, 1345 (Cal. Ct. App. 2003); *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920 at *3 (S.D. Cal. Apr. 3, 2012).

There's no doubt that Eckler's claims draw heavily on the alleged lack of any scientific evidence that glucosamine is good for the body's joints. In the very opening of her complaint, for example, she states that "Equate does not support joint comfort, renewal and rejuvenation" and then continues, "Clinical cause and effect studies have found no causative link between the primary purported active ingredients in Equate and the prevention of joint degeneration or relief from joint discomfort. And, there are no competent or well-designed clinical studies that support Wal-Mart's joint comfort, renewal and rejuvenation representations." (FAC ¶ 2.) Translation: Equate's claims are unsubstantiated. That allegation seems to takes center stage in Eckler's complaint:

- Wal-Mart represents that the joint comfort, renewal and rejuvenation benefits are achieved from the combination of ingredients in the Product. The primary active ingredient in Equate is glucosamine hyrdrochloride . . . . There is no competent and reliable scientific evidence that taking glucosamine — let alone through oral administration — helps to "rebuild cartilage", "lubricate joints" or "support joint comfort". In fact, clinical cause and effect studies have found no causative link between glucosamine supplementation and joint comfort, renewal or rejuvenation. (FAC ¶ 13.)

- The Equate product also contains a Proprietary Blend consisting of [a list of ingredients] . . . . There is no competent scientific evidence that taking any of these ingredients — let alone through oral administration — has the ability to "rebuild cartilage", "lubricate joints" or improve joint comfort. In fact, clinical cause and effect studies have found no causative link between supplementation with any of the ingredients, alone or in combination, and joint comfort, renewal or rejuvenation. (FAC ¶ 14.)

- There are no competent and reliable scientific studies that support Wal-Mart's joint comfort, renewal and rejuvenation representations. Indeed, clinical cause and effect studies establish that Wal-Mart's joint comfort, renewal and rejuvenation representations are deceptive. For example, the National Institute of Health . . . concluded that "[g]lucosamine and chondroitin sulfate alone or in combination did not reduce pain effectively in the overall group of patients with osteoarthritis of the knee." (FAC ¶ 16.)

- For example, the National Collaborating Centre for Chronic Conditions reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis. (FAC ¶ 18.)

- Scientific studies also confirm that the other ingredients in Equate are inefficacious. (FAC ¶ 19.)

- Despite the scientific evidence that the ingredients in Equate do not renew or rejuvenate joints or improve joint comfort and without possessing any competent and reliable scientific evidence that the Product works as advertised, Wal-Mart continues to convey through its advertising and labeling one uniform message: Equate helps to "rebuild cartilage", "lubricate joints" and "support joint comfort" in all joints in the human body, for individuals of all ages or for all stages of joint disease. (FAC ¶ 20.)

- Specifically, Wal-Mart failed to disclose that Equate does not renew or rejuvenate joints or improve joint comfort and well-conducted, clinical cause-and-effect studies have fond no causative relationship between the active ingredients in Equate and the prevention of joint degeneration or relief from joint discomfort. (FAC ¶ 22.)

Eckler accuses Wal-Mart of cherry-picking her allegations out of context to cast this as a "lack of substantiation" case. There's really no denying, though, that Eckler's claims are based almost exclusively on her allegations that the purported benefits of glucosamine either: (1) are completely unsubstantiated by Wal-Mart; or (2) have been disproved by the scientific community.[2]

But (1) and (2) aren't necessarily the same thing—a point that Wal-Mart seems to miss by conflating the above excerpts. There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are "unsubstantiated," but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an "unsubstantiated" claim is

---

[2] The Court sees only one allegation, really, that goes beyond the substantiation issue: Eckler claims that she took Equate and it didn't do for her what she expected it to: "The Product Plaintiff Eckler purchased did not rebuild her cartilage, lubricate her joints or improve her joint comfort as represented." (FAC ¶ 9.) Of course, how would she actually know that? The health and comfort of joints is probably influenced by a number of variables. Did Eckler keep all of them constant, adjust for ones that can't be kept constant (like aging), and then somehow have her cartilage and joints examined? Did she keep precise records of how much Equate she took, why she took it, and just how long she took it for? Can she document what her physical condition was before she and after she took Equate? Probably not. What's more likely is that she took Equate casually and just didn't feel much better, but that makes her own claims just as speculative as she alleges Equate's benefits are. On the other hand, Eckler can't reasonably be expected to come forward with some rigorous medical exam that shows Equate did her no good. That's just the nature of the product at issue; it's really only scientific testing that can show a supplement's claims to truly be false and/or misleading.

- 4 -

only the former. For example, Wal-Mart cites *Chavez v. Nestle USA, Inc.* as a case in which a lack of substantiation claim was dismissed. *See* 2011 WL 2150128 (C.D. Cal. May 19, 2011). But the district judge in *Chavez* found that "Plaintiffs' pleading has shifted from allegations of affirmative misrepresentations by Defendant . . . to essentially alleging that Defendants' claims about its products are deceptive because they are unsubstantiated." *Id.* at *1. That suggests a distinction between a claim about a product that has been disproved (which is closer to an affirmative misrepresentation) *and* a claim about a product for which there's no proof at all (which is closer an unsubstantiated claim). Indeed, the judge construed the claim as a lack of substantiation claim because "Plaintiffs do not, for example, allege facts challenging the relationship of DHA and brain development, the role of Vitamin C and zinc in immune function, or of pre-biotic fiber in digestion . . . . Plaintiff has not articulated what about that claim is deceptive beside the fact that it is supposedly unsubstantiated." *Id.* at *4. The Court sees this case a little differently. To the extent Eckler points to studies that allegedly debunk the purported benefits of glucosamine hydrochloride, she isn't just saying those benefits are unsubstantiated. She is saying they are positively false.[3] (*See* FAC ¶¶ 16–19.)

In light of the above, the Court simply doesn't see this as a "lack of substantiation" case. If the complaint is to be dismissed, it must be deficient under Rules 8, 9(b), or 12(b)(6) of the Federal Rules of Civil Procedure.

/ /

/ /

---

[3] This is also how the Court reads *Frank v. Bayer*, another case on which Wal-Mart relies. *See* 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009). The *Frank* court recognized that a private plaintiff may bring a false advertising claim only "by pleading facts to support an allegation that Defendant's advertising claims are *false or misleading*." *Id.* at *8. Here, Equate purports to be good for the body's joints. A study showing no connection between Equate's active ingredients and joint health, however, is a fact that suggests Equate's claims are false. Wal-Mart also relies on *Stanley*, but Judge Gonzalez treated that as a "lack of substantiation" case, as the Court reads her opinion, because the plaintiff's experts could only say that the claims of the products at issue were *inconclusive*—not that they were false. 2012 WL 1132920 at *6. *Stanley* is therefore distinguishable from a case, like this one, in which plaintiffs point to studies that they claim actually disprove a product's claims.

## III. Discussion

It's best to start with the representations at issue. While Eckler's complaint incorporates screen shots of Equate's packaging, the Court finds it easier to read the color copy attached to Wal-Mart's motion to dismiss. Reading that copy from left to right, the Court identifies the following representations. First, "Glucosamine Chondroitin Complex is a synergistic combination of the latest in joint health ingredients, specifically designed for those individuals who are serious about protecting and maintaining their joint health." Second, "Glucosamine Chondroitin Complex has a proprietary blend of ingredients that support healthy joints." Third, "Glucosamine Chondroitin Complex helps protect cartilage and helps maintain the cellular components within joints." Fourth, it "Helps Protect Cartilage." Fifth, from the front of the box, Glucosamine Chondroitin is "[f]ormulated to help [s]upport joint comfort [and] [r]ebuild cartilage and lubricate joints." It is this fifth representation that Eckler's complaint focuses on.[4] (*See* FAC ¶¶ 1, 12, 15, 20.)

### A. UCL Claim

Eckler's first claim arises under California Business and Professions Code § 17200, *et seq.*, California's Unfair Competition Law. Unfair competition includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. The section is written in the disjunctive, so it establishes three separate and distinct theories of liability. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). The definition of an unlawful business practice is straightforward: "anything that can properly be called a business

---

[4] Eckler actually re-states the representation as the "joint comfort, renewal and rejuvenation representation," which imputes to Wal-Mart language it doesn't use. (*See* FAC ¶ 1.) She does the same, arguably, when she alleges that Wal-Mart "promises that Equate will help rebuild cartilage, lubricate joints and improve joint comfort for all joints in the human body, for adults of all ages and for all stages of joint disease." (*Id.*) The packaging does suggest, at a minimum, that Equate is good for the shoulder, wrist, elbow, hip, and knee joints; a picture of a human body on the packaging calls attention to these areas specifically. It's less clear to the Court that merely claiming a product supports joint comfort, rebuilds cartilage, and lubricates joints suggests it provides benefits to all persons and for all stages of joint disease—especially when a disclaimer on the packaging says, very clearly, that Equate "is not intended to diagnose, treat, cure, or prevent any disease." So, for purposes of this motion to dismiss, the representation at issue is the actual representation on the Equate box that it is formulated to "help . . . [s]upport joint comfort [and] [r]ebuild cartilage and lubricate joints."

practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). A fraudulent business practice is also straightforward: "one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1254 (2d Dist. 2009) (internal quotations omitted). *See also Paduano v. American Honda Motor Co., Inc.*, 169 Cal.App.4th 1453, 1469 (4th Dist. 2009). The definition of an unfair business practice is more elusive. One definition is a practice that "offends an established public policy" or that "is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *Id.* An unfair practice may also be one in which "(1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." *Morgan* at 1255. *See also Merchante v. Sony Corp. of America, Inc.*, 2011 WL 6027602 at *2 (S.D. Cal. Dec. 5, 2011).

Eckler pleads her UCL claim in all possible ways. Even though the coverage of the UCL has been described as "sweeping" and its standard for wrongful business conduct as "intentionally broad," *In re First Alliance Mortg Co.*, 471 F.3d 977, 995 (9th Cir. 2006), this is somewhat confusing. The elements and factual bases of the varied claims aren't necessarily identical, and yet Eckler makes no effort to plead the claims independently of one another. For example, under the "unlawful" prong of § 17200, Eckler alleges that the Equate representations at issue violate California's False Advertising Law, Cal. Bus. and Prof. Code § 17500, as well as various provisions of the California Civil Code: § 1572 pertaining to actual fraud, § 1573 pertaining to constructive fraud, § 1709 pertaining to fraudulent deceit, § 1711 pertaining to deceit to defraud the public, and § 1770 pertaining to unfair methods of competition and unfair or deceptive acts.[5] (*See* FAC ¶ 38.) As for the "unfair" prong, Eckler

---

[5] The problems with Eckler's method of pleading are manifest. California Civil Code §§ 1572 and 1573 apparently deal with fraud in contracts, and they define fraud and constructive fraud in more ways than one. Section 1711 seems to require an intent to defraud, which Eckler doesn't really allege with respect to Wal-Mart. (*See* Opp'n Br. at 8; *but see* Reply Br. at 6 n.3.) Section 1770 defines twenty-four unfair methods of competition and deceptive acts, and Eckler doesn't identify which Wal-Mart has allegedly engaged in. Finally, In the Court's experience, violations of § 17500 are typically alleged as free-standing claims, rather than predicate violations of law that give rise to a § 17200 claim. (The False Advertising Law prohibits product statements that are untrue or misleading, and which are

- 7 -

asserts that Equate's representations offend an established public policy "against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers." (FAC ¶¶ 40–41.) And as for the "fraudulent" prong, Eckler asserts that the Equate representations are "false, misleading and/or likely to deceive the consuming public." (FAC ¶ 44.)

To the Court, Eckler's UCL claim comes in under the UCL's "fraudulent" prong. The core of the claim, after all, is that the representations at issue are false and misleading, and likely to deceive the public. (*See* FAC ¶¶ 1–2, 3, 12, 23, 43–44.) Her opposition brief confirms this in multiple places: (1) "To the contrary, the FAC alleges false and deceptive advertising, specifically that Wal-Mart presented a uniform message on its Equate Glucosamine product's packaging and advertising that Equate Glucosamine will provide specific joint health benefits, when in fact it does not"; (2) "Wal-Mart casts Plaintiff's case as something it is not — a 'lack of substantiation' case — rather than the false advertising case that it is."; (3) "Plaintiff's UCL and CLRA false advertising claims are 'distinct from common law fraud.'"; (4) "Plaintiff need only show that the advertising is 'likely to deceive' and need not prove it is actually 'false.'" (Opp'n Br. at 1, 4, 7, 14.) The allegations that the representations are "unlawful" and "unfair" appear for the first time when she actually identifies her UCL claim, and seem to be thrown in just to plead the claim exhaustively. Eckler does not, as the Court has noted, take care to specifically plead the elements of the predicate, unlawful California Civil Code violations. Nor does she identify the established public policy the alleged misrepresentations violate, or plead facts to suggest they are immoral, oppressive, and substantially injurious to customers. *Twombly* is clear that "a formulaic recitation of the elements of a cause of action" isn't enough to survive a motion to dismiss, and yet that is precisely what Eckler gives Wal-Mart and the Court with respect to a UCL claim based on "unlawful" and "unfair" practices. *See Twombly*, 550 U.S. at 555.

//

---

known or should be known to be untrue or misleading. And ordinarily, a violation of the UCL's fraud prong is also a violation of the False Advertising Law, at least where, as here, the violations are premised upon the same conduct. *See Morgan*, 177 Cal.App.4th at 1259.

Because Eckler's UCL claim sounds in fraud, it is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b).[6]

Here, then, is how the Court sees this case. Equate represents that it is "[f]ormulated to help [s]upport joint comfort [and] [r]ebuild cartilage and lubricate joints." Eckler alleges that this representation is false and misleading, in light of the following studies [7]:

---

[6] The parties make too much out of this question, which, in the Court's view, very little turns on. Wal-Mart's argument for dismissal isn't that Eckler fails to plead fraud with specificity, but that the representations at issue simply aren't false and misleading in the first place.
Anyway, in federal court, "Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). (This is true even for UCL claims brought under the "unlawful" and "unfair" prongs that allege fraudulent conduct. *Id.* at 1127.) The cases Eckler cites to the contrary are either not good law in this Court *or* confuse the (correct) argument that UCL claims must be pled with specificity with the (false) argument that the elements of common law fraud are required to state a claim under the UCL. So, Wal-Mart is right about the applicability of Rule 9(b) here. *See Elias v. Hewlett-Packard Co.*, 2012 WL 4857822 at *8 (N.D. Cal. Oct. 11, 2012) (applying Rule 9(b) to UCL and FAL claims). The Court also notes that in *Cardenas*, a virtually identical lawsuit brought in the Eastern District of California by Eckler's lawyers, the court found that Rule 9(b) applied. *See Cardenas*, 2012 WL 1593196 at *8 ("Because the alleged fraudulence of Defendants' advertising is inseparable from any other averments made as part of Plaintiff's UCL claim, the court determines that Plaintiff's UCL claim, as a whole, must meet the pleading standards of Rule 9(b).").
That said, all Rule 9(b) requires is that "a party . . . state with particularity the circumstances constituting fraud or mistake." To satisfy this requirement, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). In this case, Eckler has identified specific representations on the Equate packaging that she believes are false and misleading, she has identified specific studies that she believes shows why those representations are false and misleading, and she has alleged when and where she bought the product and for how long Wal-Mart has been selling it.
That seems an adequate offering of the "who, what, when, where, and how" of Wal-Mart's alleged fraud as required. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Rosales v. FitFlop*, 2012 WL 3224311 at *4 (S.D. Cal. Feb. 8, 2012) (finding UCL plaintiffs complied with Rule 9(b) by: (1) providing reproductions of defendant's product advertisements and identifying the allegedly misleading language; (2) identifying the time period of the product's advertising campaign; and (3) providing facts showing defendants misrepresented the product's benefits).

[7] To be clear, Wal-Mart makes no representation that the purported benefits of Equate have been clinically proven. That is why Eckler's reliance on *Rikos v. Proctor & Gamble Co.* and *Morey v. NextFoods, Inc.* is misplaced. In *Rikos*, advertisements for the P&G product at issue said its benefits were clinically proven, but the plaintiff alleged that P&G's clinical trial was actually inconclusive. 782 F.Supp.2d 522, 527 (S.D. Ohio 2011). In *Morey,* too, the product at issue claimed to be clinically proven to promote healthy digestion, but the plaintiff alleged that the product had never been clinically tested. 2010 WL 2473314 at *1 (S.D. Cal. June 7, 2010).

- 9 -

- In 2006, a study funded by two divisions of the National Institutes of Health—the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases—concluded that "[g]lucosamine and chondroitin sulfate alone or in combination did not reduce knee pain effectively in the overall group of patients with osteoarthritis of the knee." This was known as the Glucosamine/Chondroitin Arthritis Intervention Trial, or "GAIT" study. The results were published in the New England Journal of Medicine in 2006. (*See* FAC ¶16.)

- In a 2008 follow up to the GAIT study, published in the journal Arthritis and Rheumatism, researchers concluded that glucosamine and chondroitin sulfate fared no better than a placebo in slowing the loss of cartilage in osteoarthritis of the knee. (FAC ¶ 17.)

- A second follow-up to GAIT study, in 2010, reached the same conclusions as the previous two studies. It found that neither glucosamine or chondroitin fared better than a placebo in reducing knee pain from osteoarthritis. (FAC ¶ 16 n.2.)

- The National Collaborating Centre for Chronic Conditions, affiliated with the Royal College of Physicians in London, reported in a 2008 osteoarthritis study that "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." (FAC ¶ 18.)

- A 2010 study by S. Wandel, "Effects of glucosamine, chondroitin, or placebo in patients with osteoarthritis of hip or knee: network meta-analysis," concluded that "Compared with placebo, glucosamine, chondroitin, and their combination do not reduce joint pain or have an impact on narrowing of joint space." (FAC ¶ 18.)

- A 2009 study by T. Towheed, "Glucosamine Therapy for Treating Osteoarthritis," concluded "there was no statistical difference between glucosamine and placebo" for hip or knee osteoarthritis pain, function, or stiffness. (FAC ¶ 18.)

- A 2008 study of MSM by S. Brien found no "definitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the knee."

The standard is the "reasonable consumer" test, "which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue." *Elias*, 2012 WL 4857822 at *9.

The first problem for Eckler, as Wal-Mart points out, is that none of these studies actually involved Equate. As its packaging makes clear, Equate contains a number of ingredients: Vitamin C; Vitamin D; Manganese; Sodium; Glucosamine, a proprietary blend of Chondroitin Sulfate, Methylsulfonylmethane, Hydrolyzed Gelatin, Boswellia serrata, and

- 10 -

Hyaluronic Acid; and Boron. And it is that overall formulation that's behind the representations at issue.[8] The second problem, which Wal-Mart also highlights, is that the studies Eckler cites are all *osteoarthritis* studies. Specifically, they looked at the impact of glucosamine, chondroitin, or MSM on the pain and loss of cartilage associated with osteoarthritis of the hip and knee. But Equate, according to Wal-Mart, doesn't represent that it will reduce the pain and cartilage loss associated with osteoarthritis. In fact, in two places the packaging states that the product "is not intended to diagnose, treat, cure, or prevent any disease." Wal-Mart argues that Eckler "cites no studies examining the effectiveness of the actual Product in providing the benefits actually represented on the Product label." (Mot. to Dismiss at 9.)

     Eckler's response to this is that these are merits arguments that are premature in a motion to dismiss. That actually depends. First, it's not really arguing the merits to claim, as Wal-Mart does, that the studies on which Eckler relies didn't even test the actual formulation of Equate. If that's true, the studies simply wouldn't show what Eckler claims they do, and the Court would be left with no facts from which to infer that Wal-Mart is liable for false advertising. That's very relevant to the Court's consideration of Wal-Mart's motion to dismiss. And second, to the extent that Eckler wanted to frame the representation at issue as promising benefits "for all stages of joint disease," it goes straight to the question whether her claims have facial plausibility that a disclaimer explicitly says Equate isn't intended to cure or treat any disease.[9] *See Iqbal*, 556 U.S. at 678. The cases on which Eckler relies to argue

---

[8] Eckler explains in her opposition brief that "[t]he studies cited in the FAC involved the same ingredients in the same amounts as Equate Glucosamine and serve to establish that Wal-Mart's joint comfort, renewal and rejuvenation representations are false. For example, all but one of the studies cited in the FAC tested glucosamine hydrochloride (the primary ingredient in the Product) alone and in combination with other ingredients, and found that 1500 mg (the same amount in the Product) was ineffective at rebuilding cartilage, lubricating joints or supporting joint comfort." (Opp'n Br. at 7 n.7.) This is a critical point that should have been included in Eckler's complaint.

[9] Eckler argues in her opposition brief that her interpretation of the Equate representations—"Equate Glucosamine will provide the represented joint health benefits to all persons and for all manner and stages of joint disease"—is not concocted because "[t]here are no qualifications or limitations placed by Wal-Mart on its labeling or packaging as to whom may gain the joint health benefits represented on the front of the packages." (Opp'n Br. at 6.) It's hard to see how the statement "This product is not intended to

that a disclaimer shouldn't be considered with a motion to dismiss are arguably distinguishable, too, because the disclaimer at issue in those cases appeared to directly contradict other representations. *See FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 12 n.9 (1st Cir. 2010) (A statement that studies prove a product cures a certain disease, followed by a disclaimer that the statement is opinion and the product actually does not cure the disease, leaves an overall impression of nonsense, not clarity."); *Johns v. Bayer Corp.*, 2010 WL 2573493 at *4 (S.D. Cal. June 24, 2010) (product claimed to reduce the risk of prostrate cancer while disclaimer said it was not intended to "diagnose, treat, cure, or prevent any disease").

Ultimately, the Court cannot accept that the studies Eckler cites lend "facial plausibility" to her claims that the Equate representations are false or misleading. *See Iqbal*, 556 U.S. at 678. The studies allegedly show that glucosamine doesn't alleviate the symptoms of osteoarthritis in the hip and knee. That is a very particular showing with respect to a degenerative joint disease, and in the Court's judgment it doesn't address the far more general claim—which *is* made by the Equate representations—that glucosamine is good for the body's joints. Throughout her opposition brief Eckler conflates these two issues, pitching a finding that Equate does little for the symptoms of osteoarthritis as a finding that it does nothing for the body's joints at all. (*See, e.g.*, Opp'n Br. at 1, 4.)

In fact, Equate is marketed as a dietary supplement that "help[s]" keep joints healthy. And not only does the packaging state in two places that it's not intended to "diagnose, treat, cure, or prevent any disease," it casts Equate as a curative for "[o]verexertion, the natural aging process and everyday wear and tear," which is yet another way of making this point clear. When false advertising claims do survive a motion to dismiss, by contrast, there is not this kind of mismatch between the representations at issue and the evidence that allegedly debunks them. In the *FitFlop* case in this district, for example, the product claimed to improve posture, increase muscle activation and toning, and reduce joint strain, but a study by the American Council on Exercise concluded that "wearing so-called fitness shoes will have no

---

diagnose, treat, cure, or prevent any disease" is not a qualification or limitation.

beneficial effect on exercise intensity or caloric expenditure compared to wearing a regular running shoe. Additionally, there is no evidence that wearing shoes with an unstable shoe design will improve muscle strength and tone more than wearing a regular running shoe." *See FitFlop*, Case No. 11-CV-973, Doc. No. 10 at ¶¶ 3, 5. 18–46. *See also Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1078 (E.D. Cal. May 10, 2010) (challenging "All Natural" representation on Snapple bottles in light of the fact that they contained high fructose corn syrup).

In light of the above, Wal-Mart's motion to dismiss Eckler's UCL claim is **GRANTED**. The Court doesn't consider whether that claim can is adequately pled on a "failure to disclose" theory because Eckler disavowed any such claim in her opposition brief. (Opp'n Br. at 4 n.2.)

### B. CLRA Claim

There is no need to separately address Eckler's CLRA claim. The standard for a CLRA claim is the same as the standard for a UCL claim, and the above analysis therefore applies. *See Elias*, 2012 WL 4857822 at *9 (addressing CLRA, FAL, and UCL fraud claim together because "[t]he standard for all three statutes is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue"). Wal-Mart's motion to dismiss the claim is **GRANTED**.

### C. Breach of Warranty Claim

Wal-Mart attacks Eckler's breach of warranty claim, first, for her failure to give notice of it before she sued. Eckler's response is that she gave notice when she served Wal-Mart with the original complaint in this case, and that this "post-filing" notice was reasonably timely. Eckler is wrong.

"To avoid dismissal of a . . . breach of warranty claim in California, 'a buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" *Alvarez c. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1142 (N.D. Cal. 2010)). But more important, this notice requirement "means pre-suit notice." *Id.* The *Alvarez* opinion

couldn't have been more clear about this: "We therefore must conclude that Plaintiffs failed to plead that they provided reasonable notice under § 2607(3)(A) because their notice letter was sent to Defendants simultaneously with service of the complaint." *Id.* Were Eckler to get her way, were it adequate to provide notice post-suit, it would completely defeat the purpose of the notice requirement, which is to "allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court." *Id.*

Wal-Mart's motion to dismiss Eckler's breach of warranty claim is **GRANTED**.

## IV.     Conclusion

Each of Eckler's claims is **DISMISSED**. The breach of express warranty claim is **DISMISSED WITH PREJUDICE**. The UCL and CLRA claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**. Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15. "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (implying leave to amend should be granted in the absence of undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party or futility of amendment). The Court also grants Eckler leave to amend mindful that the Ninth Circuit has recognized that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Eckler should keep the following in mind if she files an amended complaint, which she must do with two weeks of the date this order is entered. First, her UCL claim needs to cleaned up. As the Court suggested above, it reads Eckler's complaint as truly pleading a fraud-based UCL claim. If, however, she also intends to plead a UCL claim based upon unlawful and unfair conduct, she must do more than simply say so. (*See, e.g.*, FAC ¶ 38.) The Court isn't suggesting that each UCL claim be asserted as an independent cause of action, but it is suggesting that Eckler pay closer attention to any elemental or factual differences between the different UCL claims she might plead. Second, to the extent Eckler's

false advertising claims turns on her own experience with Equate, rather than studies that show it doesn't deliver the joint benefits it suggests, she needs to say far more than, in essence, "I took Equate and didn't feel any better." (*See* FAC ¶ 9.) And third, Eckler needs to do more to explain why the studies she cites regarding glucosamine and osteoarthritis contradict the actual representations at issue.[10] That continues to be the Court's biggest problem with her complaint. What do studies showing that glucosamine doesn't alleviate the symptoms of osteoarthritis in the hip and knee have to do with the representations of a dietary supplement, explicitly *not* intended to treat a disease, that it is formulated to support joint comfort, rebuilt cartilage, and lubricate joints? The Court won't commit to a final ruling on this issue should Eckler file an amended complaint, but she should at least know where the Court stands now.

**IT IS SO ORDERED**.

DATED: October 31, 2012

_____
**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[10] The Court is well aware that Eckler's lawyers' complaint in *Cardenas*, the Osteo Bi-Flex case, survived a motion to dismiss—although it notes that the complaint in *Cardenas* alleged simply that "clinical cause and effect studies have found no causative link between supplementation and joint renewal or rejuvenation." Case No. 11-CV-1615 (E.D. Cal.), Doc. No. 25 at ¶ 21. The complaint didn't identify the particulars of the studies, and had it, this may have led the court to reach a different conclusion than it did. It certainly bothers the Court here that there is a disconnect between the representations at issue and what the studies cited by Eckler actually show. Moreover, it's not necessarily a merits issue that the Court should pass on. If the disconnect is as wide as the Court suspects, Eckler's claims may be wholly speculative and the Court may not be able to reasonably infer that Wal-Mart has engaged in false or deceptive advertising on the basis of the facts alleged. And that means dismissal is proper.

- 15 -